# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

STEFANIE CRAMER,

         CV 10-77-M-DWM-JCL

    Plaintiff,

  vs.

         FINDINGS & RECOMMENDATION
JOHN ALDEN LIFE     OF UNITED STATES
INSURANCE COMPANY,  MAGISTRATE JUDGE
d/b/a ASSURANT HEALTH,
and INGENIX, INC.,

    Defendants.

_____

   Plaintiff Stefanie Cramer ("Cramer") brings this putative class action under

the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.

("ERISA"),  alleging claims for wrongful denial of benefits, breach of fiduciary

duty, and declaratory relief.  Defendant John Alden Life Insurance Company d/b/a

Assurant Health ("Assurant") and its subrogation administrator, Ingenix, Inc.

("Ingenix") have moved to dismiss under Federal Rule of Civil Procedure 12(b)

for lack of subject matter jurisdiction and failure to state a claim upon which relief

may be granted.

   For the reasons stated below, Cramer fails to state a claim for relief under

ERISA and the Defendants' motions to dismiss should be granted.

## I.     Background

On December 4, 2009, Cramer was injured in a car accident when an oncoming driver crossed the centerline and collided with the vehicle in which she was a passenger.  Cramer subsequently settled with the tortfeasor's liability insurance carrier for the $100,000 policy limits.  Cramer also recovered $100,000 in underinsured motorist ("UIM") benefits and $5,000 in medical pay coverage from her own insurance carrier, Farmers Insurance Exchange ("Farmers").

At the time of the accident and for a few weeks thereafter, Cramer had health insurance coverage with Blue Cross Blue Shield of Michigan as a dependent under her parents' policy.  From January 1, 2010 to the present, however, Cramer has had health insurance coverage through an ERISA-governed health insurance plan ("Plan") sponsored by her employer, Dental Distinctions, PC.  Assurant is the Plan's insurer, and has paid accident-related medical expenses on Cramer's behalf.

The Plan provides for the following right of subrogation with respect to benefits paid to or on behalf of "Covered Persons":

> To the extent necessary for reimbursement of benefits paid to or on behalf of the Covered Person, We are entitled to subrogation against a judgment or recovery received by the Covered Person from a third party found liable for a wrongful act or omission that caused the injury necessitating benefit payments.

Our right of subrogation may not be enforced until You have been fully compensated for Your injuries.

Dkt. 1-4, at 22.

Ingenix administers the subrogation and recovery rights under the Plan. Dkt. 34-1.  On March 23, 2010, Ingenix Subrogation Analyst Peggy Roff sent Farmers a "Notice of Subrogation by the Plan" and asked Farmers to "please consult with [Ingenix] prior to settlement to verify the final lien amount."  Dkt. 48-2.  Approximately two weeks later, Ingenix advised Cramer's counsel that Assurant had paid $1,900.92 in medical benefits, requested "a status update on this loss," and similarly asked counsel to contact Ingenix "prior to settlement to confirm our final lien amount."  Dkt. 9-2, at 6.  In response, Cramer's counsel wrote a letter asking for copies of the relevant plan documents and advising Ingenix that under Montana law an insurer is not entitled to subrogation or reimbursement until the insured has been made whole.  Dkt. 9-2, at 8.   In late April 2010, Ingenix provided Cramer's counsel with a copy of the Plan's subrogation provision, and reiterated its request that she "contact us prior to settlement to confirm our final lien amount."  Dkt. 9-2, at 9.

On May 11, 2010, Farmers advised Cramer's counsel that it had agreed to pay the $100,000 policy limits, but indicated "there [was] a medical lien from Ingenix that [would] need to be resolved prior to payment."  Dkt. 9-2, at 12.

Farmers asked how the lien would be resolved, and how counsel "would like the check(s) made payable." Dkt. 9-2, at 12. Cramer's counsel responded later that day, advising Farmers that although they did not have a lien from Ingenix, they did have "a notice of subrogation claim" and asked that the check be made out to the firm's trust account. Dkt. 9-2, at 13. Counsel stated that it was the firm's practice to "withhold the total amount of medical expenses incurred until the subrogation claim [was] resolved," and indicated it was their intent to do the same "in this case." Dkt. 9-2, at 13.

On May 12, 2010, Cramer's counsel advised Ingenix of her opinion that Cramer had not yet been made whole and requested "written confirmation that Assurant Health is not seeking subrogation in this case, and is withdrawing the $1,900.92 'lien' it asserted on April 8, 2010." Dkt. 9-2, at 14. Alternatively, counsel asked Ingenix to authorize Farmers to release the full amount of the policy limits and stated that she would withhold the alleged subrogation amount in trust pending a declaratory action. Dkt. 9-2, at 14. Cramer's counsel followed up with another letter on May 13, 2010, detailing the basis of her opinion that Cramer had not been made whole and requesting written confirmation that Assurant was not seeking subrogation and was "withdrawing the $1,900.92 'lien'." Dkt. 9-2, at 15-16.

On May 14, 2010, Farmers sent Cramer's counsel the $100,000 in policy limits in exchange for her assurance that they not distribute $1,900.92 out of the proceeds until Assurant's subrogation claim was resolved. Dkt. 48-1, ¶ 6. On May 24, 2010, Cramer's counsel advised Ingenix that she was in receipt of the settlement proceeds and stated that if she did not hear back from Ingenix by May 28, 2010, she would go ahead and file a declaratory judgment action against Assurant. Dkt. 9-2, at 17. On May 25, 2010, Cramer's counsel gave Cramer all of the policy proceeds except for the $1,900.92. Dkt. 48-1, ¶ 7.

Ingenix responded in writing on June 1, 2010, stating that based on the information provided, it could not honor counsel's "request for a waiver" at that time and asked "what degree of permanency Ms. Cramer's prognosis carries." Dkt. 9-2, at 18. Ingenix did "offer a 1/3 reduction for your attorney fees." Dkt. 9-2, at 18. Cramer's counsel promptly rejected the offer and indicated she would file suit unless Ingenix and Assurant fully released the "lien" by the close of business on June 2, 2010. Dkt. 9-2, at 20.

On June 2, 2010, Cramer entered an hourly fee agreement with her counsel for the stated purpose of "resolv[ing] any and all liens and subrogation claims" arising out of the December 4, 2009, accident. Dkt. 48-4, at 1. Shortly thereafter, on June 16, 2010, Cramer filed a Complaint and Request for Declaratory Judgment

against Ingenix and Assurant (collectively "Defendants") in state court advancing claims founded entirely upon state law.  Dkt. 4.

Ingenix contacted Cramer's counsel on June 24, 2010, and stated that it would "not be pursuing any subrogation or right of reimbursement" with respect to the December 4, 2009, accident. Dkt. 9-2, at 22.  Cramer's counsel would not agree to dismiss the complaint, however, and on July 15, 2010, Defendants removed the case to this Court based on federal question jurisdiction under ERISA. Dkt. 1.  On Defendants' subsequent motion, the Court dismissed Cramer's complaint based on ERISA preemption, but afforded her the opportunity to amend her complaint to state a claim for relief under ERISA.  Dkt. 36.

Cramer has since filed her Amended Class Action Complaint, asserting claims for declaratory relief, benefits, and equitable relief for breach of fiduciary duty.  Dkt. 17.  Cramer's claim for declaratory relief asks the Court to declare that "the Defendants are not entitled to wrongfully subrogate in violation of the plan language" and "are not entitled to subrogate without first conducting a made whole analysis."  Dkt. 17, ¶¶ 26-27.  Cramer also seeks a declaration that "the Defendants asserted subrogation claims in light of clear and unambiguous plan language to the contrary [which] constitutes a breach of fiduciary duty or duties to plan beneficiaries."  Dkt. 17, ¶ 28.

Cramer's claim for benefits alleges that Assurant wrongfully asserted a subrogation claim despite the fact that she had not yet been fully compensated for her injuries, "thereby reducing the benefit to which Plaintiff was entitled [] under the policy." Dkt. 17, ¶ 42. Cramer also claims that both Defendants breached their fiduciary duties by asserting a subrogation claim despite the fact that she had not yet been made whole and by forcing her into litigation to "release" the wrongful subrogation claim.[1] Dkt. 17, ¶¶ 46-57.

Defendants have moved under Federal Rule of Civil Procedure 12(b) to dismiss Cramer's lawsuit for lack of subject matter jurisdiction based on lack of standing, and failure to state a claim upon which relief may be granted.

## II.    Legal Standards - Motion to Dismiss

### A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted.   "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake*

---

[1] The amended complaint also contains several class action allegations. Dkt. 17, ¶¶ 29-37. Cramer anticipates representing "those persons insured under a policy issued by Defendants specifically stating a subrogation [claim] does not arise until the insured has been made whole, but against whom the Defendants asserted a subrogation claim anyway." Dkt. 17 ¶ 30. Defendants have filed a preemptive motion to deny class certification, which will not be fully briefed until January 5, 2011.

*Coalition v. United States Environmental Protection Agency*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

A defendant may pursue a Rule 12(b)(1) motion to dismiss for lack of jurisdiction either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations.  *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The success of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  In a facial challenge the court must assume the allegations in the complaint are true and it must "draw all reasonable inferences in [plaintiff's] favor."  *Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving such a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Safe Air for Everyone*, 373 F.3d at

1039.  If the moving party has "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039 (*quoting Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).  In looking to matters outside the pleadings, the Court must "resolve all disputes of fact in favor of the non-movant...similar to the summary judgment standard." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).  As with a motion for summary judgment, the party moving to dismiss for lack of subject matter jurisdiction "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

The Defendants' motion to dismiss for lack of standing constitutes a factual challenge to the subject matter jurisdiction of this Court.  To determine whether Cramer has standing, the Court properly looks outside the pleadings to the other materials of record.

### B.  Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests

the legal sufficiency of a complaint. *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6)  motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

While the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129

S.Ct. at 1950.

## III.   Discussion

Defendants argue this action should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Cramer has not shown a cognizable injury in fact and therefore lacks standing under Article III of the United States Constitution.  Defendants also maintain that Cramer's lawsuit should be dismissed under Rule 12(b)(6) because she has failed to state a viable claim for relief under ERISA.  Even if Cramer had viable claims for relief under ERISA when she filed her complaint,  Defendants argue as a final matter that those claims have become moot in light of the fact that they have since relinquished any right of subrogation to the $1,900.92.  Because it presents a threshold jurisdictional question, the Court turns first to the merits of Defendants' motion to dismiss for lack of standing.[2]

### A.   Constitutional Standing

"Federal courts are courts of limited jurisdiction," having the power to hear cases only as authorized by the Constitution and by Congress.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Article III of the United States Constitution "limits the jurisdiction of federal courts to 'cases' and

---

[2]  The Court is not at liberty to bypass this issue and simply assume there is subject matter jurisdiction for the purpose of reaching the merits-based question of whether Cramer has stated a claim for relief under ERISA.  *See e.g. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

'controversies.'" *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121,

1126 (9th Cir. 1996).  Standing is an "essential and unchanging part" of this case-

or-controversy requirement.  *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir.

2010).  As the party invoking federal jurisdiction, a plaintiff bears of burden

establishing standing to sue.[3]  *San Diego County*, 98 F.3d at 1126.

At an "irreducible constitutional minimum," Article III standing requires

proof  "(1) that the plaintiff suffered an injury in fact that is 'concrete and

particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) of a

causal connection between the injury and the complained-of conduct; and (3) that

a favorable decision will likely redress the alleged injury."  *Alaska Right to Life*

*Political Action Committee v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (quoting

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Defendants

maintain that Cramer cannot make it over the threshold hurdle of establishing that

she has suffered an injury in fact for purposes of satisfying the first element of

Article III standing.

---

[3]  In the typical removal case, the burden of proving that a plaintiff has
Article III standing lies with the removing defendant.  See *Lujan v. Defenders of
Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2136 (1992).  Here, however, Cramer
conceded that her state law claims were preempted by ERISA.  She did not object
to the Defendants' original motion to dismiss on preemption grounds, asking only
that she  be "allowed to file an amended complaint consistent with ERISA and
federal law."  Dkt. 9, at 7.  As the party seeking relief under ERISA in this federal
forum, it falls upon Cramer to show that she has standing.

Cramer disagrees, and maintains she "has standing simply because her rights under ERISA and the Plan were violated."   Dkt. 48, at 11.  As Cramer notes, ERISA's civil remedy section confers standing on participants to enjoin "any act or practice which violates...the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA also gives participants standing to recover benefits, to enforce rights under the terms of the plan, or to clarify "rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Cramer argues she has standing simply by virtue of the fact that she is a plan participant who has alleged a statutory violation and need not show any other injury in fact for purposes of satisfying Article III.

But the Ninth Circuit has rejected this argument in the context of ERISA. *Fernandez v. Brock*, 840 F.2d 622, 628 (9th Cir. 1988).  The plaintiffs in *Fernandez* argued "that when Congress enacts a statute imposing a statutory duty, the violation of this duty is sufficient to satisfy the injury-in-fact prong of standing, even though no injury would exist without the statute." *Fernandez*, 840 F.2d at 628.   The *Fernandez* Court disagreed with that broad proposition, concluding instead that the mere violation of a statutory duty does not necessarily satisfy the injury-in-fact requirement of Article III.  *Fernandez*, 840 F.2d at 628. The Ninth Circuit has since reaffirmed the notion that an ERISA plaintiff must not only have statutory standing under the civil enforcement provisions of § 1132(a),

but must also satisfy the separate, minimum requirements of constitutional

standing.  *See Harris v. Amgen, Inc.*, 573 F.3d 728, 735 (9th Cir. 2009); *Paulsen v.

CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009).  In other words, a "plan participant

must identify a statutory endorsement of the action and assert a constitutionally

sufficient injury arising from the breach of a statutorily imposed duty." *Kendall v.

Employees Retirement Plan of Avon Products*, 561 F.3d 112, (2d. Cir. 2009).   For

purposes of establishing standing, Cramer must thus show that she has suffered an

injury in fact as a result of the Defendants' alleged statutory violations.

### 1.  Economic Injury

A plaintiff may satisfy the injury-in-fact prong of the constitutional standing

analysis by demonstrating economic injury.  *Central Arizona Water Conservation

Dist. v. United States Environmental Protection Agency*, 990 F.2d 1531, 1537 (9th

Cir. 1993).  As with any injury that is alleged for purposes of establishing

standing, such an economic injury must be "concrete and particularized and actual

or imminent, not conjectural or hypothetical." *Central Arizona Water*, 990 F.2d at

1537.  *See also*, *National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 856 (9th

Cir. 2002) (economic harm must be "actual, discrete, and direct").

Cramer claims to have suffered two types of economic injury sufficient to

confer constitutional standing.  First, she maintains that "the investment of time

and money by Ms. Cramer and her counsel prior to this litigation as they attempted to persuade Defendants to release their lien and follow the terms of the plan" constitutes an injury in fact. Dkt. 48, at 10. Second, Cramer asserts she was injured because of "the delay in payment of tort damages" – in other words, the totality of the $100,000 in UIM benefits – resulting from the Defendants' allegedly wrongful conduct. Dkt. 48, at 10.

### a.   Legal expenses and attorney fees

In early June 2010, Cramer and her attorney entered into an hourly fee agreement pursuant to which Cramer agreed to pay $250 per hour for services provided "to resolve any and all liens and subrogation claims." Dkt. 48-4. Cramer claims "she was forced to haggle for four months through her counsel" at the rate of $250 per hour, "and eventually file suit, before Defendants conceded her right to the benefits at issue." Dkt. 48, at 14. Cramer maintains that the legal expenses and attorney fees she incurred while trying to convince the Defendants to release their lien constitute an injury in fact. Dkt. 48, at 14-15. To be precise, Cramer did not enter the hourly fee agreement until June 2, 2010. Thus, the hourly services expended by Cramer's counsel related to counsel's efforts to resolve any claim of subrogation as to the $1,900.92 of undisbursed UIM proceeds.

But because such pre-litigation attorney fees and expenses are not

redressable under ERISA, they cannot provide the basis for constitutional standing. To have Article III standing, Cramer must show it is likely that the injury she asserts "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). It is well-established that attorney fees for pre-litigation work are not recoverable under ERISA. See e.g., *Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 316-17 (9th Cir. 1993); *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 987 n.51 (9th Cir. 2001). Thus, to the extent Cramer claims to have standing based on the legal expenses and attorney fees she incurred in the months preceding this litigation, she is mistaken.

To the extent Cramer alternatively argues that the legal fees she has incurred thus far in conjunction with bringing and maintaining this lawsuit constitute an injury in fact sufficient to confer standing, she is similarly mistaken. The United States Supreme Court has made clear that "[a]n 'interest in attorney's fees...is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 480 (1990)). In other words, "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must

give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Citizens for a Better Environment.,* 523 U.S. at 107.   Cramer must point to something other than attorney fees and legal expenses, pre-litigation or otherwise, for purposes of establishing standing.

In an effort to meet this burden, Cramer recasts her argument and alleges injury in the form of a denial of benefits.  She argues that "[t]he assertion of the lien by Defendants was a denial of benefits because it sought a return of her benefits, although the benefits – minus the cost of fighting the unlawful lien – were essentially reinstated when the lien was dropped after the filing of this suit." Dkt. 48, at 14.   The thrust of Cramer's position is that at the time she commenced this lawsuit, the Defendants were effectively denying her benefits because they were asserting their right of subrogation against a portion of the UIM policy proceeds.  Although Cramer concedes that the Defendants have since "reinstated" those benefits because they "dropped" the lien after she filed suit, she maintains that  "the Defendants' conduct in forcing her to incur attorney's fees has undermined the value of the benefits given, rendering them meaningless." Dkt. 49, at 7.

Cramer's attempt to characterize the Defendants' actions as a denial of benefits is not convincing.  As discussed above, Cramer's pre-litigation and

litigation-related attorney fees do not constitute an injury in fact and cannot provide the basis for establishing standing. When Cramer filed her lawsuit, she had received all of the benefits due her under the Plan. While Cramer may legitimately have worried about the possibility of having to reimburse Defendants for the $1,900.92 in benefits they had previously paid her, she was never required to do so. Cramer cites no authority for the proposition that the "assertion" of a right to subrogation under an ERISA governed plan constitutes a denial of benefits, particularly where the participant has received all benefits due and has not been required to pay anything pursuant to a plan's subrogation provisions.[4] Cramer has thus failed to establish that she suffered an economic injury in the form of attorney fees or a denial of benefits sufficient to confer standing.

> b.   *Delay in Payment*

Finally, Cramer claims she was injured "because the payment of tort

---

[4] Cramer cites two cases for the proposition that a reinstatement of benefits afer suit is filed is not grounds for dismissal. *Pakovich v. Verizon LTD Plan*, 2009 WL 2252239 (S.D. Ill. 2009); *Doe v. Raytheon Co.*, 2002 WL 1608279 (D. Mass. 2002). But because Cramer was not denied benefits in the first place, it matters not whether a so-called "reinstatement of benefits" is grounds for dismissal.  Even if it could be said that the Defendants had effectively denied Cramer benefits by "asserting" a right of subrogation, *Pakovich* and *Raytheon* simply stand for the proposition that if a defendant reinstates benefits after suit has been filed, the plaintiff will not be precluded from thereafter seeking litigation-related attorney fees.

compensation was delayed." Dkt. 48, at 13-14.  Apparently, it is Cramer's position that the payment of the totality of the UIM benefits was delayed as a result of the Defendants' allegedly wrongful conduct, and she suffered economic injury by virtue of the fact that she was deprived of a portion of the UIM benefits until the Defendants stated in writing that they would not be pursuing any right of subrogation or reimbursement.

When Cramer filed her Complaint on June 16, 2010, she had not yet received the disputed $1,900.92.  According to Cramer, the reason she had not received the full amount of the UIM benefits was because the Defendants were wrongfully enforcing their right of subrogation in violation of the "made whole" provision of the Plan.  Dkt. 4.  The fact that Cramer claimed, in part, that the Defendants were, in effect, wrongfully depriving her of a portion of the UIM benefits in contravention of the Plan was sufficient to give her standing to file her lawsuit.

Cramer spends much of her time attempting to characterize the $1,900.92  in UIM benefits as benefits due her under the terms of the Plan.  As discussed above, however, the Court rejects that characterization.  Despite Cramer's mischaracterization of her alleged injury, however, the Court finds that Cramer has adequately alleged economic injury in the form of loss of use of her UIM

-19-

benefits.  This injury, which was ongoing at the time Cramer filed her complaint, could be redressed by a favorable decision on Cramer's claim for equitable relief under § 1132(a)(3).  While the fact that Cramer received the totality of the UIM benefits within days of filing suit – thus limiting her alleged economic injury – may bear upon the question of whether her claims are now moot, it is of no consequence for purposes of determining whether Cramer had standing to sue.

Standing is to be determined by the facts that exist at the time the complaint is filed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 569 n. 4 (1992).  And actual economic injury, even if minuscule, is sufficient to confer standing. *National Automatic Laundry & Cleaning Counsel v. Shultz*, 443 F.2d 689, 693 (D.C. Cir. 1971).

While the Court finds Cramer had standing to bring suit at the time she filed her suit in state court, whether she has stated a viable claim for relief under ERISA and whether her claims have since become moot are separate questions. *See e.g. Smith v. Arthur Anderson LLP*, 421 F.3d 989,1006 (9th Cir. 2005) (citing several cases for "the proposition that the 'question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to hear the controversy, is separate from the question of whether a plaintiff has a cause of action'") (quoting *Cardenas v. Anzai*, 311 F.3d 929, 933-34 (9th Cir. 2002)). *See also Bernhardt v.*

*County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)  (discussing the well-established distinction between standing and mootness).

Defendants move to dismiss on both grounds, arguing as a threshold matter that Cramer has failed to state a claim for relief under ERISA.  Defendants also argue that any claim Cramer might have had based on their allegedly wrongful conduct has since become moot in view of the fact that they relinquished any right of subrogation and Cramer received the disputed $1,900.92 within days of filing suit.   The Court agrees for the reasons set forth below that Cramer has not stated stated a viable claim for relief under ERISA and her lawsuit should be dismissed on that basis.

> 2.   Prospective relief

To the extent Cramer seeks prospective relief, Defendants argue she is without standing because she has alleged only a speculative possibility of future harm.   Defendants are correct.

To have constitutional standing, a plaintiff seeking prospective injunctive or declaratory relief must "demonstrate a reasonable likelihood of future injury." *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).  *See also Nelsen v. King* County, 895 F.2d 1248, 1250-51 (9th Cir. 1990); *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (a plaintiff

seeking prospective relief must show that she faces "a credible threat of future harm"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983).  A claim for declaratory or injunctive relief is not sufficiently concrete and particularized to meet the case or controversy requirement of Article III "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998).

Cramer seeks a declaration that the "Defendants are not entitled to wrongfully subrogate in violation of the plan language" or "without first conducting a made whole analysis."  Dkt. 17, ¶¶ 26-27.  As to injunctive relief, Cramer asks the Court to "enjoin the Defendants from further violating" their duties under ERISA, and "from further asserting subrogation claims prior to the insured being made whole."   Dkt. 17, ¶¶ 61-62.

These allegations are not sufficient for purposes of demonstrating that there is a reasonable likelihood that the Defendants will violate their duties under ERISA or impermissibly seek to enforce a yet to ripen claim for subrogation.  The Defendants have unequivocally stated that they will "not be pursuing any subrogation or right of reimbursement" with respect to Cramer's December 4, 2009, accident.  Dkt. 9-2, at 22.  Whether Cramer will make another claim for

benefits under the Plan, whether Cramer would be made whole, whether there

would be a third-party recovery to which Defendants could be subrogated, and

whether the Defendants would engage in the same allegedly wrongful conduct are

all uncertain.  Cramer's prayer for prospective relief thus reflects a "generalized

interest in deterrence, which is insufficient for purposes of Article III."  *Citizens*

*for a Better Environment*, 523 U.S. at 108-09.

      In an effort to sidestep the uncertainty of future events, Cramer argues that

she "has sufficiently alleged a continuing violation that will be redressed by an

injunction requiring the Defendants to refrain from further violating the Plan."

Dkt. 48, at 15.  See e.g. *Citizens for a Better Environment*, 523 U.S. at 108-09

(allegations of a continuing violation may justify injunctive relief).  Cramer argues

it would be reasonable for this Court to infer from the allegations in her amended

pleading that Defendants make it their general business practice to serve

subrogation liens on Plan participants and liability insurers without first

determining whether their insureds have been made whole.  Cramer argues that

"[t]his general business practice poses an imminent threat to all plan participants,"

and therefore maintains she has standing to pursue injunctive relief.  Dkt. 48, at

16.

      Even assuming it would be reasonable to infer from the allegations in

Cramer's amended pleading that the Defendants engage in the acts she complains

of as a general business practice, Cramer would still lack standing to pursue

prospective relief.  The ERISA violations Cramer alleges in connection with her

December 4, 2009, accident are not ongoing.  To the contrary, the Defendants

advised Cramer in June 2010 that they would not be pursuing a right of

subrogation with respect to the accident.  As illustrated by the many uncertainties

set forth above, Cramer has not demonstrated that there is a reasonable likelihood

that she will be subjected to the Defendants' allegedly wrongful business practices

in the future.  As no class has yet been certified, whether the Defendants are likely

to subject other plan participants to the same allegedly wrongful business practices

is not relevant.  Because Cramer has alleged only a speculative possibility of

future harm, she lacks standing to pursue her claims for prospective injunctive and

declaratory relief.

   **B.   ERISA claims**

   To state a viable claim for relief under ERISA, "a plaintiff must fall within

one of ERISA's nine specific civil enforcement provisions, each of which details

who may bring suit and what remedies are available." *Paulsen v. CNF Inc.*, 559

F.3d 1061, 1072 (9th Cir. 2009).  Only three of these provisions authorize private

civil enforcement actions.  Under § 1132(a), a plan participant like Cramer may

sue to recover benefits due under the plan, to enforce her rights under the terms of

the plan, or to clarify rights to future benefits.  29 U.S.C. § 1132(a)(1)(B).  Section

1132(a) also authorizes a plan participant to bring an action for breach of fiduciary

duties, to enjoin violations of ERISA or the Plan, or to obtain other equitable

relief.  29 U.S.C. § 1132(a)(2)&(3).  *See also Paulsen*, 559 F.3d at 1084.

 Cramer seeks relief under two of these three provisions, categorizing her

claims as one for benefits under § 1132(a)(1)(B), and one for equitable relief under

§ 1132(a)(3).[5]  *See* Dkt. 17, ¶¶ 33(d), 25-28, 38-57; Dkt. 48, at 8.

### 1.    Claim for Benefits

Subsection 1332(a)(1)(B) allows a plan participant "to recover benefits due

to him under the terms of his plan, to enforce his rights under the terms of the

plan, or to clarify his rights to future benefits under the terms of the plan."  Cramer

has asserted what she terms in briefing a claim for restoration of benefits, taking

the position that her benefits "were effectively reduced by the cost of the legal

services necessitated by the wrongful enforcement of the subrogation interest."

Dkt. 48, at 20.  As discussed above, however, Cramer has not shown that this is a

viable theory upon which to rest a claim for denial of benefits and has not

---

[5] Cramer concedes that no cause of action is available to her under §
1132(a)(2) because she is seeking relief for injuries to her own rights and those of
other plan participants, rather than for injuries to the plan itself.  Dkt. 48, at 8 n. 1.

established that she was in fact denied any benefits.

Even assuming Cramer had met these threshold burdens, she nevertheless fails to state a viable claim for benefits because neither Assurant nor Ingenix is the Plan administrator.  It is well-established in the Ninth Circuit and "every other circuit that has expressly considered the issue, that § 1132(a)(1)(B) does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator."  *Everhart v. Allmerica Financial Life Ins. Co.*, 275 F.3d 751, 756 (9th Cir. 2001).

The Plan specifically states that Assurant is not the plan administrator.  Dkt. 32-1, at 1.  The Plan defines the "Plan Administrator" as "[t]he Employer or a person or entity chosen by the Employer to administer the group health plan."  Dkt. 32-1, at 26.  This means that Cramer's employer, Dental Distinctions, is the Plan administrator.

Cramer concedes that the Plan identifies her employer as the plan administrator, but nevertheless argues that the Defendants should be considered de facto plan administrators because "they perform all the administrative services and exercise wide-ranging discretionary power over the plan and its assets."  Dkt. 48, at 20.  But the Ninth Circuit has previously rejected the "argument that an insurer who 'controlled the administration of the plan and made the discretionary

-26-

decisions as to whether benefits were owed' could be sued under § 1132(a)(1)(B)." *Ford v. MCI Communications Corp. Health and Welfare Plan*, 399 F.3d 1076, 1082 (9th Cir. 2005) (quoting *Everhart*, 275 F.3d at 759)).  As the *Ford* court recognized, "ERISA defines a plan administrator as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'" *Ford*, 399 F.3d at 1081 (quoting 29 U.S.C. § 1002(16)(A)(i)).

This means that the identity of the plan administrator in any given case is to be determined in accordance with the terms of the plan.   Because the Plan in this case specifies that Cramer's employer, Dental Distinctions, is the plan administrator, Cramer cannot state a claim for denial or reinstatement of benefits against either of the Defendants under § 1132(a)(1)(B).

As Cramer notes, § 1132(a)(1)(B) also allows a participant to bring suit in an effort to enforce her rights under the terms of the plan, or to clarify her rights to future benefits.   Cramer argues that the thrust of her lawsuit is not for the reinstatement of her benefits, but for injunctive and equitable relief to stop the Defendants' allegedly improper conduct and rectify the harm she claims to have suffered.

To the extent Cramer may in fact be seeking injunctive and equitable relief, § 1132(a)(3) provides the proper statutory vehicle for such a claim.   In any event,

and regardless of the statutory subsection under which it falls, Cramer's claim for equitable and injunctive relief fails as a matter of law for the reasons set forth below.

### 2.   Equitable Relief

Section 1132(a)(3) provides that a plan participant or beneficiary may bring a civil action "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  In other words, to be entitled to injunctive or other appropriate equitable relief, Cramer must ultimately show that the Defendants have violated, or are reasonably likely to violate, ERISA or the terms of the Plan.

As pled, Cramer's theory in this case is that the Defendants wrongfully asserted a subrogation claim against her in violation of the terms of the Plan.  Dkt. 17, ¶¶ 16-23, 26-28, 52-56.   Specifically, Cramer alleges that the Defendants violated the Plan's subrogation provision, which states as follows: "Our right of subrogation may not be enforced until You have been fully compensated for Your injuries."  Dkt. 17, ¶ 15; 1-4, at 22.  Cramer asks the Court to declare that Defendants breached their fiduciary duty by "asserting" a subrogation claim against her despite her "not being made whole and in conflict with specific plan

language." Dkt. 17, ¶¶ 28, 52.

Defendants argue that Cramer has failed to state a claim for relief based on a violation of the Plan's subrogation provision because she does not allege, and cannot show, that they wrongfully "enforced" a right of subrogation against her. Defendants are correct.

Nowhere in her Amended Complaint does Cramer allege that the Defendants actually "enforced" a subrogation claim against her. Dkt. 17. She instead alleges only that they "asserted" a subrogation lien without first determining whether she had been made whole. Dkt. 17, ¶¶ 16-18, 20-21, 28, 30, 33, 36, 40, 51-55. As the Defendants correctly maintain, there is a substantive distinction between "asserting" a right of subrogation, as the Defendants did during the course of pre-litigation correspondence in this case, and going so far as to "enforce" a right of subrogation by initiating a judicial proceeding. This distinction is particularly important in the ERISA context.

A subrogation provision in an ERISA-governed plan may give rise to an equitable lien. *See e.g.*, *Mairena v. Enterprise Rent-A-Car Hospital Insurance Plan*, 2010 WL 3931098 **6-7 (N.D. Cal. 2010) (citing *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 364 (2006)); *Landwehr v. DuPree*, 72 F.3d 726, 738 (9th Cir. 1995) (explaining that an equitable lien is available under 29

U.S.C. § 1132(a)(3) as a "means by which to compel restitution to an ERISA

plan"). A fiduciary of an ERISA-governed plan seeking to enforce a plan's

subrogation provision may do so by bringing suit under § 1132(a)(3) for equitable

relief, including the imposition of an equitable lien. *See e.g. Sereboff*, 547 U.S. at

361-62; *Popowski v. Parrott*, 461 F.3d 1367, 1371 (11ᵗʰ Cir. 2006). Such judicial

proceedings are a necessary prerequisite to enforcing a right of subrogation

through an equitable lien. *See e.g.* 53 C.J.S. *Liens* § 49 ("When an equitable lien

secures a debt, the creditor must take court action to subject the security to

payment of debt.").

  Cramer does not allege that either of the Defendants in this case instituted a

civil enforcement action under § 1132(a)(3) or for that matter took any judicial

action whatsoever to enforce their right of subrogation through an equitable lien.

Cramer instead argues in response to the Defendants' motion that the term

"enforced" as it appears in the Plan is ambiguous and should be construed against

the Defendants to encompass the pre-litigation discourse that took place here.

  As in the typical insurance case, a court "must construe ambiguities in an

ERISA plan against the drafter and in favor of the insured." *Barnes v.*

*Independent Automobile Dealers Association of California Health and Welfare*

*Benefit Plan*, 64 F.3d 1389, 1394 (9ᵗʰ Cir. 1995). Moreover, courts are to

"interpret terms in ERISA insurance policies 'in an ordinary and popular sense as would a person of average intelligence and experience.'" *Evans v. Safeco Life Insurance Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (quoting *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)).   That having been said, courts "will not artificially create ambiguity where none exists."  *Evans*, 916 F.2d at 1141 (internal quotation omitted).  If, "on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists."  *Deegan v. Continental Casualty Co.*, 167 F.3d 502, 507 (9th Cir. 1999).   If, however, "a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy."  *Evans*, 916 F.2d at 1441.

Cramer argues that the term "enforced" could reasonably be read by a plan participant as encompassing the Defendants' conduct in this case during the "months of haggling" that preceded her lawsuit.  Dkt. 48, at 18; 49, at 4.  Cramer maintains that the Defendants wrongfully "enforced" their right of subrogation in their pre-litigation correspondence with Cramer's attorney.[6]  Specifically, Cramer

---

[6] As the parties evidently agree, this Court may consider these pre-litigation letters when ruling on Defendants' Rule 12(b)(6) motion because they are integral to Cramer's claims and their authenticity is not in dispute. See 1 *Motions in Federal Court* § 5.133 (3d ed.); Dkt. 9, at 3 n.1 (Cramer agreeing in response to Defendants' original motion to dismiss that the Court may consider counsel's affidavit and attached correspondence).

points to the April 8, 2010, letter in which Ingenix asked Cramer's counsel to contact it "prior to settlement to confirm our final lien amount."  Dkt. 49, at 4; 9-2, at 6.  Cramer argues that "[t]his conduct in and of itself constitute[d] an enforcement of a subrogation claim because it prohibit[ed] Plaintiff's counsel from distributing those claimed funds until the existence or amount of the claim[ed] lien or subrogation claim [could] be resolved."  Dkt. 49, at 4.  Cramer also contends that the  Defendants "enforced" their right of subrogation by sending Farmers a "Notice of Subrogation by the Plan."  Dkt 48, at 18-19; 48-2.

        But Cramer's reading of the word "enforced" is so broad as to be unreasonable.  The letters exchanged between Defendants and Cramer's counsel between March and June of 2010 reflect an ongoing discussion as to whether Cramer had been made whole, and whether the Defendants would have the right to subrogate against Cramer's recovery from Farmers.  As Cramer's counsel acknowledged in her May 11, 2010, letter to Farmers, there was "no lien" from Ingenix, only "a notice of subrogation claim."  Dkt. 9-2, at 13.  Three days later, Cramer's counsel received the $100,000 in policy proceeds from Farmers. Counsel then chose to hold $1,900.92 of that amount in trust based on her correspondence with the Defendants.  While that was certainly a legitimate choice

on her part in view of what she describes as her "haggling"[7] with the Defendants,
it does not mean that the Defendants were "enforcing" their right of subrogation in
violation of the Plan.  To the contrary, the parties' correspondence simply reflects
that they were embroiled in a dispute as to whether Cramer had been made whole
and whether the Defendants would be entitled to subrogate.  The letters did not
constitute an "enforcement" of the Defendants' right of subrogation.

    If the Court were to conclude otherwise, and construe the Defendants'
letters and requests for information as an "enforcement" of their right of
subrogation undertaken in violation of the Plan language, then Defendants would
essentially be prohibited from notifying plan participants, counsel, or third-party
insurance companies of the Plan's potential recovery rights and from conducting
the very made whole analysis that Cramer claims is so critical.  In other words, if
the Court were to accept Cramer's expansive reading of the word "enforcement,"
then Defendants could not request information from a Plan participant or her
counsel in an effort to determine whether the participant had been made whole,
because doing so would constitute the "enforcement" of their subrogation right,
which is impermissible unless the Defendants first conduct a made whole analysis.
Because Cramer's reading of the word "enforced" is thus unreasonable, there is no

---

[7] Dkt. 48, at 14.

ambiguity.

Cramer's Amended Complaint is replete with allegations that Defendants "asserted" a right of subrogation, but says nothing about wrongfully "enforcing" a right of subrogation.  Consistent with the allegations of Cramer's amended complaint, the  Defendants may well have "asserted" a right of subrogation in their correspondence with counsel and Farmers.  But because the Defendants did not initiate any judicial proceedings, they did not "enforce" a right of subrogation without first determining whether Cramer had been made whole in violation of the terms of the Plan.   Because Cramer has not alleged any actionable conduct, she has failed to state a claim for equitable relief under § 1132(a)(3) of ERISA.[8]

## IV.    Conclusion

For all of the above reasons,

IT IS RECOMMENDED that the Defendants' motions to dismiss be GRANTED and this case be dismissed in its entirety.

IT IS FURTHER RECOMMENDED that the Defendants' motion to deny class certification be DENIED as MOOT.

DATED this 3rd day of December, 2010

   /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

[8] Having so concluded, the Court need not address the Defendants' final argument and determine whether Cramer's claims are moot.