Amy Eddy
BOTTOMLY & EDDY Trial Attorneys, pllp
1230 Whitefish Stage Road, Suite 100
Kalispell, MT 5990
Phone: (406) 752-3303
Email: belawyers@belawyers.com

John Morrison
MORRISON LAW FIRM
80 South Warren
Helena, MT 59601
Phone: (406) 442-6922
Email: jmmmontana@msn.com

Larry Anderson
Attorney at Law, P.C.
P.O. Box 2608
Great Falls, MT 59403-2608
Phone: (406) 727-8466
Fax: (406) 771-8812
Email: laa@silverstatelaw.net

   *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STEFANIE CRAMER,<br><br>*Plaintiffs*,<br><br>vs.<br><br>JOHN ALDEN LIFE INSURANCE COMPANY d/b/a ASSURANT HEALTH, INGENIX, INC., AND JOHN DOES 1-5,<br><br>*Defendants*. | Cause No. CV-10-77-M-DWM-JCL<br>Honorable Jeremiah Lynch,<br>U.S. Magistrate Judge<br><br><br>PLAINTIFF'S OBJECTIONS TO MAGISTRATE LYNCH'S FINDINGS AND RECOMMENDATION |

## I.  OBJECTION

COMES NOW Plaintiff Cramer pursuant to 28 U.S.C. §636(b)(1), and

hereby objects to Magistrate Lynch's Findings & Recommendation filed on

December 3, 2010, that Plaintiff has failed "to state a claim for relief under ERISA

and that the Defendants' motions to dismiss should be granted."  Dkt. 52, p. 1.

Cramer does not object to the factual background as articulated by Magistrate

Lynch, and will not reiterate such factual background herein except as necessary to

support the legal analysis.  Dkt. 52, pp. 2-7.  Cramer does specifically object to

Magistrate Lynch's finding Cramer has no claim for injunctive or equitable relief

under §1132(a)(3) because the notice of subrogation sent by the Defendants, and

their subsequent actions, do not constitute "enforcement" of the subrogation claim,

and, accordingly, there is no wrongful conduct.  Dkt. 52, pp. 29-34.  Because of

this objection, Magistrate Lynch's Findings and Recommendation are subject to de

novo review by this Court.  28 U.S.C. §636(b)(1).

## II.  LEGAL ANALYSIS

### A.    Introduction

The central issue in this litigation is whether the pre-litigation actions taken

by the Defendants constituted "enforcement" of their subrogation claim, or a

simple "assertion" insufficient to trigger a claim for relief under ERISA.  Cramer

respectfully asserts the conduct of the Defendants in this case, and their market

conduct, reveals a pattern of practice that goes beyond notification or assertion, and, in fact, constitutes enforcement of the subrogation claim.  At the very least, there is an ambiguity as to what constitutes enforcement of a subrogation provision under the plan language at issue here.  Any ambiguity should be construed in favor of Cramer, and in this case would be sufficient to defeat the Defendants' motions to dismiss.

If the Court were to find this conduct does constitute enforcement, there is no question the conduct was done in violation of clear plan language specifically stating, "Our right of subrogation may not be enforced <u>until You have been fully compensated for Your injuries</u>."  Dkt. 52, p. 3 (emphasis added).  There is no question Cramer has not been fully compensated for her injuries, and the Defendants have never offered a shred of evidence or argument to the contrary.

**A.   The Defendants' actions constitute enforcement of the subrogation claim, and Magistrate Lynch incorrectly relied on equitable lien principles to rule otherwise.**

The term "enforce" is not defined in the plan language, or otherwise defined by ERISA.  Accordingly, it should be given its common meaning.  "To compel observance of or obedience to" is the definition given to the word "enforce" by the American Heritage Dictionary.  As demonstrated in this case, steps taken to effectuate the subrogation claim constitute enforcement.  Certainly, sending the notice of subrogation to the auto insurer in the effort to preclude distribution of the

settlement funds prior to the subrogation claim being paid constitutes enforcement.

Likewise, sending the subrogation claim to Cramer's counsel and refusing to

release the subrogation claim in the face of clear evidence Cramer was not fully

compensated constitutes enforcement.

However, to the extent there is any ambiguity in the interpretation of the

term enforce, principles of *conta proferentum* provide that any ambiguities be

construed against the insurer. *Barnes v. Indep. Auto. Dealers Ass'n of Calif.*

*Health and Welfare Benefit Pla*n, 64 F.3d 1389 (9th Cir. 1995) (ambiguity in

subrogation clause interpreted against the insurer). Cramer respectfully submits

that an ambiguity does exist as to what constitutes pre-litigation enforcement, and

that ambiguity is reflected by the conduct of the parties in this case:

On the one hand, the Defendants engage in the conduct described in this

case with the intent of enforcing their subrogation claim and preventing the

distribution of proceeds until such claim has been satisfied. In this vein, the auto

insurer and Cramer's counsel treat it as enforcement of the subrogation claim: the

auto insurer refuses to distribute the settlement proceeds in light of the notice of

subrogation, and Cramer's counsel also withholds the full amount of the

subrogation claim pending final resolution of the issue—mindful of her potential

personal exposure for wrongfully disbursing such proceeds. *Longaberger Co. v.*

*Kolt*, 586 F.3d 459 (6th Cir. 2009).

On the other hand, the Defendants now claim they never intended to enforce their subrogation claim, and their conduct was only an assertion of the subrogation claim, apparently with the mere attempt to put the other parties on notice. Unfortunately, this position ignores the practical effect of their conduct, which they are fully aware of, thereby creating the ambiguity.  The practical effect is that all parties substantively treat the subrogation claim as a lien, even though, legally, an equitable lien does not exist. Indeed, in this case Ingenix referred to the subrogation claim as a "lien."  Dkt. 9, Aff. Eddy, Ex. 9.  Furthermore, Magistrate Lynch acknowledged that the Defendants' conduct in sending the Notice of Subrogation to the auto insurer prevented disbursement of the settlement funds, resulting in economic injury to Cramer.  Herein lies the ability of the Defendants to effectively enforce their subrogation claim, while at the same time dodging their ERISA obligations because their conduct falls short of filing an enforcement action.

Magistrate Lynch adopted the Defendants' argument and avoided finding an ambiguity by relying on an equitable lien analysis, which is inapplicable in these circumstances.  Magistrate Lynch correctly found a subrogation provision in an ERISA plan <u>may</u> give rise to an equitable lien, and that an enforcement action <u>may</u> be brought under §1132(a)(3) to impose an equitable lien to enforce a subrogation provision.  Dkt. 52, pp. 29-30.  Magistrate Lynch further found a judicial

proceeding is a "necessary prerequisite" <u>to enforce a right of subrogation through an equitable lien</u>.  Dkt. 52, p. 30.  Under this analysis, Magistrate Lynch found that Cramer's interpretation of "enforcement" to include the actions in this case was so broad as to be unreasonable, and that there was no ambiguity between the two terms.  However, Magistrate Lynch's analysis begs the question of whether a subrogation claim can be enforced short of an enforcement action, i.e., pre-litigation.

**2.     The practical effect of Magistrate Lynch's ruling will be to allow plaintiffs' counsel, and liability and UIM insurers to ignore notices of subrogation that are routinely sent claiming a sum certain amount against tort recoveries.**

The practical effect of Magistrate Lynch's findings potentially undermines the historic cooperation that has existed between insurers, claimants, and claimants' counsel to resolve subrogation claims.  Instead, plaintiff's counsel can now ignore the routine notice of subrogation sent in cases like this, safe in their knowledge that these notices have no legal effect, and that until an enforcement action is filed no equitable lien exists preventing the distribution of the settlement proceeds.  Magistrate Lynch's ruling establishes that the only <u>way</u> an ERISA subrogation provision can be enforced is through a formal enforcement action.

While Magistrate Lynch found that to rule otherwise would preclude the Defendants from providing notification of *potential* recovery rights and from conducting a made whole analysis, the record does not support such a conclusion.

Dkt. 52, p. 33.  Properly drafted notices of subrogation would be appropriate.  For example, in this case, had the Defendants included the language of the recovery provision in their notices, and actually sought information regarding the made whole doctrine, we would not be in this position and Magistrate Lynch's concerns would be well-founded.  However, such is not the case.  The Defendants here were not exploring whether a subrogation claim existed, they were assuming one existed and attempting to enforce it.

### III.  CONCLUSION

For the foregoing reasons, Cramer respectfully asks the Court to overrule Magistrate Lynch's findings to the extent he granted the Defendants' Motion to Dismiss as to Cramer's claims for equitable relief under §1132(a)(3).

DONE and DATED this 15th day of December, 2010.

BOTTOMLY & EDDY Trial Attorneys

By:__/s/Amy Eddy_____
        Amy Eddy

*Attorneys for Plaintiff*

CERTIFICATE OF COMPLIANCE

I, Amy Eddy, an attorney at the law offices of BOTTOMLY & EDDY Trial Attorneys, pllp, do hereby certify that pursuant to L.R. 7.1(d)(2)(E), the foregoing document is formatted according to L.R. 10.1, and contains 1449 words, which is less than the 6500 word limitation imposed for this document by L.R. 7.1(d)(2)(A).

DONE and DATED this 15th day of December, 2010.

BOTTOMLY & EDDY Trial Attorneys


By:__/s/Amy Eddy_____
            Amy Eddy

*Attorneys for Plaintiff*